# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ACOSTA,<br><br>Plaintiff,<br><br>v.<br><br>DOWN TOWN CAR WASH, INC. dba DOWNTOWN EXPRESS; and WESTFIELD INVESTMENTS AND ASSOCIATES LLC aka WESTFIELD INVESTMENT & ASSOCIATES, INC.,<br><br>Defendants. | Case No. 1:16-cv-01856-LJO-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART**<br><br>(Doc. No. 13)<br><br>**OBJECTIONS DUE: 21 DAYS** |

## I. INTRODUCTION

On March 10, 2017, Plaintiff Jose Acosta ("Plaintiff") filed a motion for default judgment against Defendants Down Town Car Wash, Inc. dba Downtown Express and Westfield Investments and Associates, LLC aka Westfield Investment & Associates, LLC (collectively "Defendants"). (Doc. 13.) No opposition to Plaintiff's motion was filed. The Court has reviewed the motion and supporting documentation and determined that the matter was suitable for decision without oral argument pursuant to Local Rule 230(g). As such, the hearing on the motion was vacated. (Doc. 14.)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED IN PART in the amount of $7,235.00.

## II. FACTUAL BACKGROUND

On December 9, 2016, Plaintiff filed a complaint pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; the California Unruh Act, California Civil Code § 51 *et seq.*; and California Health & Safety Code §§ 19955, 19959. (Doc. 1 ("Complaint").) The Complaint seeks an award of statutory damages, prejudgment interest on the damages, costs of suit, attorney's fees, and injunctive relief. *Id.* Plaintiff alleges that he requires the use of a wheelchair for mobility (Compl., ¶ 8), and the property that is the subject of this suit, Downtown Express (the "Property"), presents numerous barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property (Compl., ¶¶ 1, 10).

Defendant Down Town Car Wash, Inc. dba Downtown Express was served with the Complaint on December 16, 2016. (Doc. 5.) Defendant Westfield Investments and Associates, LLC aka Westfield Investment & Associates, LLC was served with the Complaint on December 22, 2016. (Doc. 6.) Neither of the defendants responded to the Complaint.

Plaintiff requested the Clerk of Court to enter default against Defendants on February 6, 2017, (Doc. 9), which was entered on February 7, 2017 (Docs. 10, 11). On March 10, 2017, Plaintiff filed a motion for default judgment against Defendants, which is currently pending before the Court. (Doc. 13.)

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default

judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.     Analysis**

    **1.     The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

        **a.     Prejudice to Plaintiff if Default Judgment is Not Granted**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendants participate and make an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

        **b.     Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief

3

sought. *See Danning v.Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to remove "barriers . . . where such removal is readily achievable." *Id.* at § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011) (en banc). Where a barrier's removal is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

According to the complaint, Plaintiff "is substantially limited in his ability to walk," "must use a wheelchair for mobility," and is thus "physically disabled" as defined by the applicable California and federal laws. (Compl., ¶ 8.) As a car wash, the Property is a facility of public accommodation, does not function as a residence, and its activity affects commerce. (Compl., ¶¶ 9, 10.) Plaintiff alleges that Defendants own, operate, or lease the Property; thus, they are allegedly liable for the Property's compliance with the ADA.[1] (Compl., ¶ 7.)

Plaintiff visited the Property and alleges that Defendants failed to provide barrier-free

---

[1] Defendants are jointly and severally liable for ADA violations in any of these capacities. S*ee Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000).

4

1 access to the Property in the following ways: (1) the parking at the employee-operated vacuum
2 area left no clear space for Plaintiff to transfer to his wheelchair, resulting in Plaintiff having to
3 unload from his vehicle in a parking space and travel through the parked vehicles to reach the
4 waiting area, which caused him fear that he might be struck by a vehicle passing through; (2) the
5 restroom door was too heavy for Plaintiff to open, causing Plaintiff to enlist the assistance of his
6 son to hold the door open while Plaintiff maneuvered in and out of the restroom; (3) there was not
7 enough clear space between the toilet stall door and the opposing wall for Plaintiff's wheelchair to
8 turn into the stall of the restroom, and the interior of the stall was not wide enough for Plaintiff to
9 pull his wheelchair inside and transfer to the toilet; (4) the restroom urinal was too high for
10 Plaintiff to use to empty his catheter bag; (5) the sink in the restroom did not have enough clear
11 space underneath the counter to allow Plaintiff to get close enough to wash his hands; and (6) the
12 transaction counter was too high. (Compl., ¶ 10.)

Plaintiff alleges that the removal of these architectural barriers is "readily achievable," or alternatively, the services could have been made available through alternative methods that were readily achievable. (Compl, ¶¶ 21–22.) As these facts are taken as true regarding Defendants following their entry of default, Plaintiff has met his burden of stating a *prima facie* Title III discrimination claim.

Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal Civ. Code, § 51(b). Additionally, no business establishment of any kind whatsoever shall discriminate against any person in California on account of disability. Cal. Civ. Code, § 51.5. The Unruh Act also incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code, § 51(f). Here, Plaintiff alleges that Defendants denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability. (Compl., ¶ 38.) Further, because Plaintiff's complaint properly alleges a *prima facie* claim under the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Civil Rights Act claim.

5

California Health and Safety Code, § 19955, mandates that all public accommodations constructed in California comply with the requirements of California Government Code, § 4450. Pursuant to Section 4450, "all buildings, structures, sidewalks, curbs, and related facilities, construed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities." Cal. Gov. Code, § 4450(a). Additionally, non-exempt public accommodations constructed prior to July 1, 1970, and later altered or structurally repaired, are required to comply with the same requirements of the California Health and Safety Code. Cal. Health & Safety Code, § 19959.

For purposes of pleading his claim, Plaintiff incorporates his prior allegations regarding the barriers he encountered at the Property (Compl., ¶ 42), and further alleges that the Property is a public accommodation "constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the [Property] was not exempt under the Health and Safety Code § 19956" (Compl., ¶ 45). Although substantially boilerplate, this claim is sufficiently pled. *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364 at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment). *See also Gutierrez v. Leng*, No. 1:14-CV-01027-WBS, 2015 WL 1498813, at *4 (E.D. Cal. Mar. 31, 2015) (same).

The Complaint sufficiently states Plaintiff's claim under Title III of the ADA, the Unruh Civil Rights Act, and California Health and Safety Code, § 19955, and there appears to be merit to the substantive allegations. As such, these *Eitel* factors weigh in favor of default judgment.

### c. Sum of Money at Stake

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment in the amount of $8,214.00, which includes attorney's fees and costs. This is not a relatively large sum of money, nor does it appear unreasonable, subject to the

deductions set forth below.[2]

### d. Dispute Concerning Material Facts

With regard to this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendants have submitted nothing to contradict the well-pled allegations in the complaint. Accordingly, this factor favors entry of default judgment.

### e. Default Due to Excusable Neglect

Defendants failed to file responsive pleadings or oppose Plaintiff's motion for default judgment. The Court has no evidence before it establishing that Defendants' failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

### f. Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

## 2. Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

### a. Injunctive Relief

Plaintiff's complaint and motion for default judgment seek an injunction requiring Defendants to make several changes and accommodations at the Property. (Compl., ¶ 10; Doc. 13-1, 5:14–7:3). As the factual allegations in the Complaint are taken as true, Plaintiff is entitled to injunctive relief as requested pursuant to both state and federal law. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III.").

//

---

[2] Plaintiff requests statutory damages in the amount of $4,000.00 and attorney's fees and costs in the amount of $4,214.00, for a total of $8,214.00. (Doc. 13, 2:11–18).

### b. Statutory Damages

The Unruh Civil Rights Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation. Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination"). A violation of the ADA constitutes a violation of the Unruh Act. As such, Plaintiff asserts that he is entitled to $4,000 in statutory damages pursuant to the California Civil Code § 52(a). (Compl., ¶ 40.)

Plaintiff has sufficiently alleged facts indicating that he visited the Property and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property. (Compl., ¶ 10.) Thus, Plaintiff is entitled to an award of $4,000 in statutory damages.

### c. Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion. California Civil Code, § 55, also provides for attorney's fees and costs for obtaining injunctive relief; section 54.3 provides fees for recovery of damages to enforce the "full and equal access" guaranteed to disabled persons by Section 54.1.

Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate. *Ferland v. Conrad Credit Corp*, 244 F.3d 1145, 1146–48 (9th Cir. 2001). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [*See D'Emanuele v. Montgomery Ward & Co.*, *Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley v. Eckerhart*, 461 U.S. 424,] 461 (1983)]. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433.
>
> A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise

unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [Footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

Here, Plaintiff seeks an award of $2,744.00 for total billable time spent on the case as well as $1,470.00 for costs and litigation expenses. (Doc. 13-1, 7:24–9:28.) Specifically, Plaintiff requests (1) $1,530.00 for 5.1 hours of work expended by Tanya Moore, Esq., at an hourly rate of $300; (2) $644.00 for 5.6 hours spent by paralegal Whitney Law at an hourly of $115; and (3) $570.00 for 6.0 hours spent by paralegal David Guthrie at an hourly rate of $95. (Doc. 13-1, 9:19–25.)

### (i) Ms. Moore's Time Expended and Hourly Rate

Regarding the number of hours expended by Ms. Moore, the Court finds that the amounts claimed by Plaintiff for certain tasks are reasonable; however, some of the time expended is unreasonable, duplicative, or inadequately documented and should be reduced.

Numerous entries throughout the billing statement reflect time spent reviewing communications to and from the Court:

| Date | Activity | Time Spent |
| --- | --- | --- |
| 12/09/2016 | Reviewed Summons and civil new case | 0.10 (6 minutes) |
| 01/10/2017 | Reviewed certificate | 0.10 (6 minutes) |
| 02/06/2017 | Reviewed request | 0.10 (6 minutes) |

9

| | | |
|---|---|---|
| 02/07/2017 | Reviewed clerk's [entry] | 0.10 (6 minutes) |
| 02/07/2017 | Reviewed clerk's entry | 0.10 (6 minutes) |
| 02/07/2017 | Reviewed clerk's entry | 0.10 (6 minutes) |

(Doc. 13-3, Ex. A.) **Total: .6 hours (36 min.)**

When considering the time entries in total, the amount of time spent essentially reviewing the docket is unreasonable, particularly given the substance of the communications and docket entries.

On December 9, 2016, Ms. Moore recorded 0.10 hours (6 minutes) reviewing the "Summons" for unidentified parties and the civil new case documents that are issued in every case filed in this Court. (Doc. 13-3, Ex. A, p. 1; *see* Docs. 2–3.) On January 10, 2017, Ms. Moore recorded 0.10 hours (6 minutes) reviewing a certificate of service filed by her office. (Doc. 13-3, Ex. A, p. 1; *see* Doc. 7.) Reviewing the above-referenced documents should have taken only a few minutes, particularly considering Ms. Moore's office had already billed for preparing the documents, the subsequent billing to review the documents that had been filed and recording that time is excessive. While reviewing automatic emails showing the occurrence of docket activity and reviewing short Court orders does take time, billing judgment must be exercised in the accumulation of billing entries of this type.

On February 6 and 7, 2017, Ms. Moore recorded 0.40 hours (24 minutes) reviewing entries on the Court's Electronic Case Filing (ECF) system consisting of the Request for Clerk to Enter Default filed by her office and the resultant entries of default by the Clerk. (Doc. 13-3, Ex. A, pp. 1–2 (four separate time entries); *see* Docs. 9–11.) Ms. Moore's time of 24 minutes for review of a document her office prepared and filed, and for reviewing the resulting ECF notes of those transactions, is excessive. *See Hensley*, 461 U.S. at 433-34 (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary).

Based on the activities recorded in reviewing routine, simple documents, the Court finds that only 0.30 hours (18 minutes) of the time expended on these activities is reasonable; thus, a reduction of 0.30 hours is warranted.

10

Further, the Court finds that the number of hours Ms. Moore billed in this case is not reasonable given the nature of this case and Ms. Moore's experience in these types of actions. On November 17, 2016, Ms. Moore recorded 1.50 hours (90 minutes) finalizing the complaint prepared by paralegal David Guthrie and reviewing "information gathered during the prefiling investigation to ensure that factual allegations in the complaint are supported by evidence, [and] research re BO/PO to ensure right defendants are named." (Doc. 13-3, Ex. A, p. 1.) That entry also recorded time for "finaliz[ing] complaint for filing" and instructing an unknown individual regarding "preparation of all required documents and client communications re same." (*Id.*) Based upon the Court's familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that this is basically a form complaint. The Complaint filed in this action is nearly identical to complaints filed by Ms. Moore in dozens of other actions in this Court, with only the names of the parties and the allegations in paragraph 10 changed to reflect the facts specific to this case. On November 14 and 15, 2016, Mr. Guthrie also billed 1.90 hours for drafting the complaint and for reviewing supporting information, and on November 15, 2016, paralegal Whitney Law also recorded 0.70 hours reviewing and revising the draft complaint. (Docs. 13-5, p. 1; 13-7, p. 1.) The Court finds that, given the additional time spent by Mr. Guthrie and Ms. Law, .5 hours of Ms. Moore's time is sufficient to review and finalize the complaint, review supporting information, and provide instruction as to filing. The Court will therefore deduct 1.0 hour from Ms. Moore's time entry on November 17, 2016.

Finally, on March 5 and 7, 2017, Ms. Moore spent 1.9 hours (114 minutes) communicating with Ms. Law regarding preparation of the motion for default judgment, reviewing "the file and deadlines," reviewing and finalizing the draft and declarations, and reviewing time and expense records. (Doc. 13-3, Ex. A, p. 2.) Ms. Law reported spending a total of 2.7 hours (162 minutes) preparing the motion for entry of default judgment and supporting documents between March 6 and 10, 2017. (Doc. 13-5, pp. 1–2.) The motion for default judgment filed in this case is nearly identical to motions for default judgment filed by Ms. Moore in other actions before this Court. "Accordingly, the Court finds that one hour of Ms. Moore's time and one hour of Whitney Law's time is sufficient to prepare the motion." *Gutierrez*, 2015 WL 1498813, at *9 (quoting *Moore v.*

*E-Z-N-Quick*, No. 1:13-cv-01522-LJO-SAB, 2014 WL 1665034 (E.D. Cal. Apr. 24, 2014)). *See also Trujillo v. Ali*, No. 1:16-cv-00694-LJO-SKO, 2016 WL 6902313, at *7 (E.D. Cal. Nov. 23, 2016). The Court will therefore deduct .9 hours from Ms. Moore's time entries, and 1.7 hours from Ms. Law's time entries, that are related to the preparation and filing of the motion for default judgment.

With regard to the hourly rate to be charged, courts generally calculate these rates according to the prevailing market rates in the relevant legal community. *Blum*, 465 U.S. at 895. In general, courts use the rates of attorneys practicing in the forum district, here, the Eastern District of California, Fresno. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991). The fee applicant bears the burden of producing sufficient evidence that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.

Plaintiff asserts that Ms. Moore specializes in representing plaintiffs in disability actions, and Ms. Moore's declaration states she has filed and successfully prosecuted close to 1,000 civil rights actions, she has handled numerous litigation matters through trial, and has been practicing law for over fifteen years–seven of which have been spent specializing in disability access litigation. (Doc. 13-2, ¶¶ 4–5.) She usually bills at $400 per hour, but has reduced her hourly rate requested in this case to $300. (Docs. 13-1, 8:17–20; 13-2, ¶ 6.)

The Court observes that courts in this district have awarded different hourly rates to Ms. Moore on her attorney fee requests. *See Moore v. Millennium Acquisitions, LLC, et al.*, 1:14–cv–01402–DAD–SAB, 2017 WL 1079753, *3 (E.D. Cal. Mar. 21, 2017); *Moore v. Chase, Inc.*, No. 1:14–cv–01178–SKO, 2016 WL 3648949, at *3 (E.D. Cal. July 7, 2016); *Trujillo v. Ali*, No. 1:16–cv–00694–LJO–SKO, 2016 WL 6902313, at *7 (E.D. Cal. Nov. 23, 2016); *Kalani v. Statewide Petroleum, Inc.*, No. 2:13–cv–02287 KJM–AC, 2014 WL 4230920, at *6 (E.D. Cal. Aug. 25, 2014). Recently, Chief Judge Lawrence J. O'Neill found Ms. Moore's hourly rate of $300 to be within the adjusted prevailing hourly rate for the Fresno area, based on the Laffey Matrix and the United States Bureau of Labor Statistics wage estimates. *See Trujillo v. Singh*, No. 1:16–cv–

01640–LJO–EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017). *Accord Trujillo v. Lakhani*, No. 1:17–cv–00056–LJO–SAB, 2017 WL 1831942, at *7 (E.D. Cal. May 8, 2017). Based upon Chief Judge O'Neill's finding in *Trujillo v. Singh*, the Court finds that Ms. Moore's requested hourly rate of $300 is reasonable, and recommends that Plaintiff be awarded the sum of $870.00 for work performed by Ms. Moore.[3]

### (iii) Paralegal Rate and Time Expended

Plaintiff seeks compensation for 5.6 hours expended by paralegal Whitney Law at $115 per hour, and 6.0 hours expended by paralegal David Guthrie at $95 per hour. (S*ee* Docs. 13-1, 9:19–25; 13-5; 13-7.) Pursuant to *Trujillo v. Singh*, the Court finds that these requested hourly rates reasonable. *Id.*, 2017 WL 1831941, at *3.

Regarding the number of hours expended by Ms. Law, her total hours are reduced by 1.7 hours, as discussed above, for a total of 3.9 hours. With respect to the number of hours expended by Mr. Guthrie, the Court finds that the amounts indicated for certain tasks are reasonable; however, some of the time expended is unreasonable, duplicative, or inadequately documented and should be reduced. On December 9, 2016, Mr. Guthrie recorded 0.60 hours (36 minutes) to file the complaint, prepare the standard civil cover sheet, and to "prepare" the complaint and verification in .pdf format. (Doc. 13-7, p. 1.) On December 12, 2016, Mr. Guthrie recorded 0.50 hours (30 minutes) "receiv[ing] and review[ing] filed documents" and the Court's Scheduling Order, "downloading" the Court's Standing Orders, preparing a letter to the California Commission on Disability Access, and sending copies of the Complaint to the Commission and to Plaintiff. (*Id.*) Mr. Guthrie's time of 66 minutes for review of documents his office prepared and filed, for reviewing the Court's standard scheduling order and standing orders, for converting documents electronically, and for filing documents using the Court's electronic filing system, is excessive. *See Hensley*, 461 U.S. at 433–34. On January 4, 2017, Mr. Guthrie recorded 0.80 hours (48 minutes) receiving and reviewing "for accuracy" the summonses for Defendants, calendaring the due date for Defendants' answers, and mailing the Court's minute order to

---

[3] This amount consists of the amount of time billed by Ms. Moore (5.1 hours) minus the Court-recommended reduction in time spent in excessive or duplicative tasks (2.2 hours), for an adjusted time of 2.9 hours multiplied by Ms. Moore's requested hourly rate of $300 per hour.

13

Defendants. (Doc. 13-7; *see* Docs. 5 & 6.) The Court finds that only 0.60 hours of the time expended by Mr. Guthrie on these activities is reasonable; thus, a reduction of 1.3 hours is warranted.

Accordingly, the Court recommends Plaintiff be awarded 3.9 hours of time expended by Ms. Law at an hourly rate of $115, and 4.7 hours of time expended by Mr. Guthrie at an hourly rate of $95, for a total of $895.00.

### (iv) Litigation Expenses and Costs

Plaintiff seeks to recover costs in the amount of $1,470.00. (Doc. 13-1, 9:19–25; Doc. 13-2, ¶¶ 10–12; Doc. 13-3, Exs. B–D.) In Section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the prevailing party other than the United States to recover a reasonable attorney's fee, including litigation expenses and costs. 42 U.S.C. § 12205. The statutory provisions of the ADA provide direct authority for the award of expert witness fees as litigation expenses under the ADA. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). The costs here include expenses for the court filing fee, costs of service, and a fee for a pre-filing site inspection of the Property, which are compensable pursuant to 42 U.S.C. § 12205 and *Lovell*. 303 F.3d at 1058. Plaintiff's overall litigation expenses and costs are compensable and should be awarded. Accordingly, it is recommended that Plaintiff be awarded the sum of $1,470.00 for litigation expenses and costs.

### e. Conclusion

For the reasons set forth above, the Court recommends Plaintiff be awarded the following fees:

| Professional | Hourly Rate | Hours | Total |
|---|---:|---:|---:|
| Ms. Tanya Moore | $300 | 2.9 | $870.00 |
| Ms. Whitney Law | $115 | 3.9 | $448.50 |
| Mr. David Guthrie | $95 | 4.7 | $446.50 |
|  |  | **Total Fees** | $1,765.00 |

Additionally, Plaintiff should be awarded $1,470.00 for the costs of suit and $4,000 in statutory damages. Thus, the total award of damages, fees, and costs recommended is $7,235.00.

14

## IV. RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment be GRANTED IN PART as specified below;

2. Judgment be entered in Plaintiff's favor and against Defendants Down Town Car Wash, Inc. dba Downtown Express; and Westfield Investments and Associates, LLC aka Westfield Investment & Associates, LLC;

3. Defendants be found and declared to be in violation of Title III of the Americans with Disabilities Act;

4. Plaintiff be awarded statutory damages under the Unruh Act in the amount of $4,000;

5. Plaintiff be awarded reasonable attorney's fees in the amount of $870.00 (2.9 hours at $300 per hour), paralegal fees in the amount of $895.00 (3.9 hours at $115 per hour and 4.7 hours at $95 per hour), and costs of suit in the amount of $1,470.00; and

6. Defendants be ordered to make the following modifications to the Property known as Downtown Express, located at 2615 Tuolumne Street in Fresno, California, such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, as follows:

   a. A van-accessible parking stall measuring at least 96 inches in width with an access aisle measuring at least 96 inches in width, or a van-accessible parking stall measuring at least 132 inches in width with an access aisle measuring at least 60 inches in width, shall be provided for car wash drop-off. Said accessible parking stall shall be located on an accessible route of travel to the designated accessible building entrance;

   b. The men's restroom door shall be properly adjusted and maintained such

|   |   |   |
|---|---|---|
| 1 | | that it requires no more than five pounds of pressure to operate; |
| 2 | c. | Clear space measuring at least 60 inches perpendicular to the side wall and 56 inches perpendicular to the rear wall shall be provided inside the men's restroom toilet compartment; |
| 5 | d. | The rim of the urinal in the men's restroom shall not exceed 17 inches in height above the finish floor; |
| 7 | e. | Knee clearance shall be provided at the lavatory in the men's restroom, measuring at least 17 inches deep at 9 inches above the finish floor, 8 inches deep at 27 inches above the finish floor, and reducing at a rate of no more than 1 inch in depth for each 6 inches in height between 9 inches and 27 inches above the finish floor; and |
| 12 | f. | An accessible portion of the transaction counter that is 36 inches long minimum and 36 inches high maximum above the finish floor shall be provided. A clear floor space measuring at least 48 inches parallel to the counter and 30 inches perpendicular to the counter, adjacent to the accessible portion of the counter, shall be provided. |

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the defendants at that defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the

//

//

specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **May 19, 2017**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE